# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARL D. BUTLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-12-319-FHS-KEW ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff Carl D. Butler (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 5, 1969 and was 41 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a pallet jack driver, a laborer, a pallet builder, a poultry processor, a block machine operator, and a farm worker. Claimant alleges an inability to work beginning August 31, 2006 due to limitations resulting from

3

hypertension, diabetes, arthritis, neck problems, left shoulder pain, numbness and pain in the left arm and hand, back pain, lift hip pain, numbness in the left leg, and the necessity to use a cane in order to walk.

## Procedural History

On September 11, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant requested benefits for the closed period from August 31, 2006 through January 31, 2008. Claimant received a favorable decision for this closed period. However, the Commissioner determined upon later review that Claimant's disability ended in February of 2008.

On March 19, 2009, Claimant filed subsequent applications for both disability and supplemental security income benefits. Claimant's applications were denied initially and upon reconsideration. On December 15, 2010, an administrative hearing was held before Administrative Law Judge ("ALJ") Michael Kirkpatrick. On January 4, 2011, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on July 19, 2011. However, on June 25, 2012, the Appeals Council issued a partially favorable

decision, reinstating Claimant's benefits for the period from August 31, 2006 through January 31, 2008. The Appeals Council also determined that Claimant's condition improved as of February 1, 2008 and that he was no longer disabled. The decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) improperly rejecting the opinions of two consultative examiners; and (2) making findings with regard to Claimant's RFC which were not based upon substantial evidence. This latter issue is also argued in relation to the Appeals Council's decision.

### Opinions of the Consultative Physicians

In his decision, the ALJ determined Claimant suffered from the severe impairments of mild degenerative changes at T11-12 and T12-L1, diabetes mellitus, hypertension, status-post pelvic and lumbar

5

spine fractures, status-post left shoulder fracture, and status-post multiple fractured ribs. (Tr. 24). He also found Claimant retained the RFC to perform a full range of sedentary work. (Tr. 25). The ALJ applied the Medical-Vocational Guidelines to conclude Claimant was not disabled. (Tr. 31).

Claimant first contends the ALJ improperly rejected the opinions the consultative examiners, Dr. Brian Oge and Dr. Gordon Strom. On July 28, 2009, Claimant underwent a consultative physical examination by Dr. Oge. Claimant reported left shoulder, neck, back, and leg problems arising from an accident. (Tr. 384). Claimant was positive for low back, left arm/shoulder and neck pain as well as numbness in the left leg. (Tr. 385). His range of motion was normal. (Tr. 386). Straight leg raising was negative. Claimant demonstrated a stiffened left leg and Dr. Oge acknowledged Claimant used a cane. Claimant could not walk on heel and toes and could not squat/arise from a squatting position. Claimant's grip strength was found to be 90% on the right and 60% on the left. (Tr. 387).

Dr. Oge concluded that Claimant had moderate limitation in his ability to perform "prolonged or heavy or repetitive lifting > 30 pounds or to prolonged overhead work." Dr. Oge also found Claimant had moderate limitation in his ability to do repetitive stooping,

6

bending, or kneeling. (Tr. 388).

On December 3, 2009, Dr. Strom performed a consultative examination of Claimant. Dr. Strom found Claimant had adequate range of motion of the cervical, thoracic, and lumbar spine. He could flex his hips on the right to 90 degrees and on the left to about 80 degrees. Claimant had limited range of motion of the left hip, but with no obvious atrophy of the leg. He could extend his leg adequately.

Claimant could also raise his right arm to a vertical position. He could raise his left arm to the horizontal plane but stated that his shoulder was uncomfortable when he extends his shoulder above the horizontal plane. No deformity was noted. (Tr. 437).

Dr. Strom's impressions included (1) traumatic injury to the left shoulder, left rib cage, and left hip with the history of a mastabular fracture requiring open reduction and internal fixation; and (2) chronic adhesive capsulitis involving his left shoulder. Although Claimant used a cane, Dr. Strom found his strength to be adequate and did not find any evidence of deformity that would limit his ability to ambulate, sit or stand. Dr. Strom suspected Claimant had difficulty lifting his left arm above his head at present and would benefit from ongoing physical therapy. He opined

7

that Claimant could perform at a sedentary level. He noted Claimant walked with a limp favoring his left leg. (Tr. 438). In his range of motion testing, Dr. Strom found Claimant had reduced movement in his left hip and left shoulder. (Tr. 439-40).

The ALJ discussed the findings of both Dr. Oge and Dr. Strom in his decision. He did not specifically state the weight he gave to these decisions. Moreover, while it might be perceived that these consultative physicians' opinions were given some weight, the ALJ's RFC contained no restrictions for the use of the left shoulder or restrictions for working overhead which both of these physicians acknowledged. (Tr. 27-28). As a result, this Court must conclude that the ALJ rejected the restrictions found by the consultative physicians without providing an explanation for doing so. The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). The ALJ failed in this analysis with regard to both Dr. Oge's and Dr. Strom's consultative opinions. On remand, the ALJ shall specifically state the weight given to these

opinions and the reason for rejecting their restrictions in Claimant's activities.

## RFC Determination

Claimant also contends the ALJ failed to consider the restrictions contained in the medical evidence to the use of his left shoulder. This argument intertwines with the above problems in the ALJ's failure to consider the restrictions in the use of the left shoulder found by Drs. Oge and Strom. Additionally, an MRI from January 18, 2008 demonstrated a tear involving the anterior and anteroinferior labrum with marked anteroinferior capsular thickening and remodeling of the anteroinferior glenoid with focal cartilage defect. A small Hill-Sachs impaction fracture of the humerus was also noted. Dr. James Wise concluded from the MRI that Claimant also had acromioclavicular arthrosis with subacromial/subdeltoid bursitis. (Tr. 318-19).

Restrictions in the use of Claimant's left shoulder were also noted by Dr. Samer Elbabaa in November of 2008 and by Dr. S. Ashfaq Hasan in August of 2009. (Tr. 325-26; 349-51). The ALJ failed to consider the limitations imposed by his shoulder condition in his RFC evaluation and, therefore, the RFC is not supported by substantial evidence. Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004).

This Court also finds the application of the Grids to be suspect in light of the obvious non-exertional limitation of the difficulty reaching overhead caused by Claimant's left shoulder condition. The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Id.

Non-exertional limitations affect a claimant's ability to meet the demands of jobs that do not involve strength. 20 C.F.R. § 404.1569a(a). Examples cited include ". . . (6) difficulty with manipulative or postural functions such as reaching, handling,

stooping, climbing, or crawling." 20 C.F.R. § 404.1569a(c). On remand, the ALJ shall reconsider the application of the Grids under the facts of this case.

**Award of Pre-Termination Benefits**

This Court has concluded that the termination of benefits was improper based upon the ALJ's decision. The Tenth Circuit has determined that in a termination of benefits case, reinstatement of benefits is the appropriate remedy upon reversal, including an award of past benefits which would have been due but for the termination. <u>Hayden v. Barnhart</u>, 374 F.3d 986, 994 (10th Cir. 2004). Accordingly, this Court will recommend that benefits be restored and Defendant be ordered to pay any benefits which would have been paid since the date of termination. It will be up to the Commissioner to decide whether to bring further termination proceedings. <u>Id</u>.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED**, that Defendant be ordered to restore Claimant's benefits, and that Claimant be

awarded an amount equal to the benefits that would have been paid from the date of termination.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 11th day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE